**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOHN SOLAK
C/O BARRON PECK
BENNIE & SCHLEMMER,

Plaintiff,

-v-

3:24-cv-843
(ECC/CBF)

BROOME COUNTY and DANIEL REYNOLDS, *in both his individual and official capacities*,

Defendants.

Douglas W. Drazen, Esq., *for Plaintiff*
Timothy J. Lambrecht, Esq., *for Defendants*

**Hon. Elizabeth C. Coombe, U.S. District Judge:**

**MEMORANDUM-DECISION and ORDER**

## I. INTRODUCTION

Plaintiff John Solak filed this action pursuant to 42 U.S.C. § 1983 asserting violations of his First Amendment right to freedom of speech arising out of a 2023 budget hearing against Broome County (the County) and Daniel Reynolds, the Chairman of the Broome County Legislature, in both his individual and official capacities (collectively Defendants). Complaint (Compl.), Dkt. No. 1 at ¶¶ 2, 5–7. He seeks declaratory, compensatory, and injunctive relief, as well as other damages. *Id.* at ¶ 7.

Presently before the Court are the parties' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. Dkt. Nos. 32, 33. The motions are fully briefed. *See* Dkt. Nos. 34, 37.

## II. BACKGROUND[1]

Plaintiff, a resident of Broome County, New York, operates "Binghamton Daily" on X. Dkt. No. 32-9 ¶¶ 5, 6. Binghamton Daily, which has approximately 2,800 subscribers, publishes five to ten posts a day, including video content that Plaintiff records and publishes, and the posts are primarily about local government. *Id.* at ¶ 6.

The Broome County Legislature (the Legislature) governs the County. *Id.* at ¶ 2. Reynolds, one of 15 elected County Legislators, was the Chairman in 2023. *Id.* at ¶¶ 3, 4. The Broome County Legislature Rules of Order for 2023–2024, state that the Chairman "shall preserve order and decorum" and "shall decide all questions of order, which shall be final, unless an appeal is taken to the Legislature and the decision is overruled." Dkt. No. 32-8 at 10; Dkt. No. 32-9 ¶ 11 ("The Chairman is responsible for maintaining order at the Budget Hearing.").

On October 19, 2023, the Legislature held its annual public budget hearing regarding the County Executive's proposed 2024 budget. Dkt. No. 32-9 ¶¶ 8, 9. As the Chairman, Reynolds presided over the hearing, and he was responsible for maintaining order and decorum. *Id.* at ¶¶ 11, 12; Dkt. No. 33-1 ¶ 11.

Prior to the October 19 hearing, Plaintiff had attended Broome County Legislature public meetings and provided public comments without incident. Dkt. No. 32-9 ¶¶ 30, 31. Reynolds was present for, and at times presided over, some of those meetings. *Id.* At some point before the

[1] The following facts are drawn from Defendants' L.R. 56.1(a) Statement of Material Facts, Dkt. No. 32-9, and Plaintiff's L.R. 56.1(b) Response to Defendants' Statement of Material Facts, Dkt. No. 33-1, to the extent those facts are well-supported by pinpoint citations to the record, and the exhibits the parties have submitted. Disputed facts are noted. The facts are construed in the light most favorable to the non-moving party on each party's motion for summary judgment. *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).

hearing, Plaintiff attempted to confront County Executive Jason Garnar publicly about "alleged personal misconduct," and Plaintiff decided to raise this issue at the hearing. *Id.* at ¶ 16.

At the beginning of the hearing, Reynolds announced the following rules: (1) the topic of the hearing was the 2024 budget; (2) comments were limited to the 2024 budget; (3) speakers would be called in the order that they signed in; and (4) speakers would be limited to three minutes. *Id.* at ¶ 12.

At the hearing, Reynolds called on Plaintiff first. *Id.* at ¶¶ 14, 15. Plaintiff recorded his statements by video from his perspective. Dkt. No. 32-2 26:15–30:07; Dkt. No. 32-7. In addition, Broome County prepared a transcript using its audio record. *See* Dkt. No. 32-9 ¶ 18; Dkt. No. 32-6. The hearing transcript[2] states that Plaintiff, who had no written or prepared remarks, and Reynolds exchanged the following statements:

> PLAINTIFF: Hello. Good evening to everybody. The camera is for my protection. My comments are germane to the budget, but the budget reflects expenses that were incurred many, many years ago. This budget doesn't start with a blank sheet of paper. Contingent liabilities, all the costs, all the past sins are somewhere represented in this budget. If the County went bankrupt, then we'd be talking about a clean slate, but we have no clean slate. The comptroller said that this process where you have department heads come up with your budget on elected officials, they warned the County about this 15 or 20 years ago. Now you're going to hear a lot about pay raises, people begging for nickels and dimes, quarters, anything that they can get, but it's interesting about that because Jason Garner [sic] hired a television news anchor, and we paid her salary. She got rapid unexplained promotions and salary increases, and the problem was that Jason Garner [sic] was having sex with this woman. He was having an affair. He's a married guy.

---

[2] Given that the motions for summary judgment are denied, Defendants may offer the transcript to the jury as an illustrative aid, but the jury will make the final determinations about what words were actually spoken. *See Highland Capital Management, L.P. v. Schenider*, 551 F. Supp. 2d 173, 189 (S.D.N.Y. 2008) (explaining that the jury may consider transcripts of recorded conversations as an aid when there is an appropriate limiting instruction).

> REYNOLDS: This is not germane to the current budget. You're going to have to speak about –
>
> PLAINTIFF: I'm talking. Okay, wait, wait.
>
> REYNOLDS: Do you have something to say relevant to the current budget?
>
> PLAINTIFF: Okay. I'm talking about liability.
>
> REYNOLDS: The current budget –
>
> PLAINTIFF: The current budget doesn't have any provision for self- insurance.
>
> REYNOLDS: You're wasting your time that you've got here for public comment. You just have to –
>
> PLAINTIFF: Well, I'm just going to go on, and you can do whatever you want to do because I got rights, Mr. Reynolds. I have rights. Jason Garner [sic] had sex with a County employee. You want to talk about - did you take your sexual harassment?
>
> REYNOLDS: I'm going to ask you to leave right now.
>
> PLAINTIFF: Why? Why? Why?
>
> MR. MARTIN: Sir, you are [ ] disrupting the meeting.
>
> PLAINTIFF: How am I disrupting the meeting?
>
> MR. MARTIN: Thank you. Thank you.
>
> PLAINTIFF: I'm talking about Jason Garner [sic] having sex with a County employee, and I'm being escorted out because everybody knows this is true. I need to get my camera if you don't mind.

*Id.* at ¶ 19.

At that point, Reynolds signaled to security so that the hearing could proceed. *Id.* at ¶ 20. Plaintiff raised his voice "after the microphone was cut" and as security approached. *Id.* at ¶ 23; Dkt. No. 33-1 ¶ 23; Dkt. No. 32-2 57:05–12. Reynolds testified that his initial intent was to remove

Plaintiff from the microphone, not remove him from the building, but security removed Plaintiff when he became "irate." Dkt. No. 32-9 ¶ 21.

After Plaintiff was removed from the microphone, the hearing continued with other speakers. *Id.* at ¶¶ 24, 25. According to Plaintiff, other speakers were allowed to make remarks that were not germane to the 2024 budget. Dkt. No. 33-1 ¶ 24. According to Defendants, the other speakers addressed staffing, pay, and program funding related to the budget. Dkt. No. 32-9 ¶ 25.

Plaintiff did not send any written comments to the Legislature Clerk after the hearing, but he had no obligation to do so. *Id.* at ¶¶ 28, 29; Dkt. No. 33-1 ¶ 29.

## III. STANDARD OF REVIEW

Under Rule 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her

favor on' an essential element of a claim[.]" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

When considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hotel Emps. & Rest. Emp. Union, Local 100 of New York, N.Y. & Vicinity v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) (quoting *Heublein v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (internal quotation marks omitted)).

## IV. DISCUSSION

The complaint alleges one claim against Defendants under 42 U.S.C. § 1983 based on a violation of Plaintiff's First Amendment right to free speech. Plaintiff and Defendants both seek summary judgment.

### A. First Amendment Claim

Defendants seek summary judgment because Reynolds enforced neutral rules regarding content and decorum. Dkt. No. 32-10 at 15–17.[3] Plaintiff responds that that Defendants silenced him based on his viewpoint and did not apply any rules in a neutral manner. Dkt. No. 33-2 at 9–14; Dkt. No. 37 at 5–9. Defendants reply that Reynolds removed Plaintiff for his conduct at the budget meeting, not for the content of his speech, and his restriction of Plaintiff's speech was based on his enforcement of neutral conduct rules. Dkt. No. 34 at 5–7.

The First Amendment provides: "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I. The government is, however, "[a]s a general matter . . . permitted to exercise control over the public's use of government-owned property for expressive purposes, and the degree of control permitted depends upon the nature of the property and the speech restrictions imposed thereon." *Mallett v. Town of Huntington*, 799 F. Supp. 3d 117, 125 (E.D.N.Y. 2025) (quoting *Hotel Emps.*, 311 F.3d at 544).

To decide whether the government violated a plaintiff's First Amendment free speech rights, courts use a three-part test set forth by the Supreme Court in *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788 (1985), examining: "(1) whether the plaintiff's speech is protected by the First Amendment; (2) the nature of the forum; and (3) whether defendant's

---

[3] Unless otherwise noted, citations to page numbers refer to pagination generated by the ECF system.

justifications for limiting the plaintiff's speech satisfy the requisite standard." *Endemann v. City of Oneida, N.Y.*, No. 19-cv-1444 (MAD/ATB), 2020 WL 1674255, at *4 (N.D.N.Y. Apr. 6, 2020) (quoting *Piscottano v. Town of Somers*, 396 F. Supp. 2d 187, 200 (D. Conn. 2005)).

Defendants do not directly address whether Plaintiff's statements at the hearing are protected by the First Amendment, and the Court therefore assumes that they do not dispute this threshold question.

Regarding the nature of the forum, the Second Circuit "analyze[s] speech restrictions on publicly owned property according to a forum-based approach." *Tyler v. City of Kingston,* 74 F.4th 57, 61 (2d Cir. 2023). "Under this approach, '[f]ora for expression are classified into four categories, which fall along a spectrum extending from those deserving the greatest constitutional protection to those deserving the least constitutional protection: (1) the traditional public forum; (2) the designated public forum; (3) the limited public forum; and (4) the non-public forum.'" *Id.* (quoting *R.O. ex rel. Ochshorn v. Ithaca City Sch. Dist.*, 645 F.3d 533, 539 (2d Cir. 2011)).

The parties do not dispute that the hearing was a limited public forum. Dkt. No. 32-10 at 17; Dkt. No. 33-2 at 9–10. The Court agrees. *See Tyler*, 74 F.4th at 61 ("there is no dispute that the Common Council meetings at issue are limited public fora.") (citing *Hotel Emps.*, 311 F.3d at 552 ("[A] limited public form is created when the government opens a nonpublic forum for public expression, but limits expressive activity to certain kinds of speakers or the discussion of particular subjects.")).

"'[I]n a limited public forum, [the] government is free to impose a blanket exclusion on certain types of speech, but once it allows expressive activities of a certain genre, it may not selectively deny access for other activities of that genre.'" *Id.* at 61 (quoting *Hotel Emps.*, 311 F.3d at 545–46) (additional quotation omitted). "For 'expressive uses not falling within the limited

category for which the forum has been opened, restrictions need only be viewpoint neutral and reasonable.'" *Id.* at 61–62 (quoting *Hotel Emps.*, 311 F.3d at 546). But "strict scrutiny is accorded . . . to restrictions on speech that falls within the designated category for which the forum has been opened." *Id.* (quoting *Hotel Emps.*, 311 F.3d at 545). "Otherwise, such restrictions are 'subject to only minimal constitutional scrutiny.'" *Id.* (quoting *Bronx Household of Faith v. Cmty. Sch. Dist. No. 10*, 127 F.3d 207, 212 (2d Cir. 1997) (internal quotation marks omitted)).

The parties also agree that the limited category for which the forum was opened was to consider the 2024 budget. Dkt. No. 32-10 at 17; Dkt. No. 33-2 at 11. But they disagree about whether Plaintiff's statements fell within that limited category. Defendants argue that Plaintiff's "personal accusations" and allegation that Mr. Garnar "was having sex with" a County employee were not related to the 2024 budget, and that therefore the test for any restrictions is that they were reasonable and neutral. Dkt. No. 34 at 6–8. Plaintiff responds that strict scrutiny applies because his statements related to the 2024 budget given that he "attempted to provide his viewpoints about how Defendants' scandals had a price tag," and how Defendants "should budget properly for the price tag of those scandals concerning litigation and training." Dkt. No. 33-2 at 13–14. Plaintiff points to his hearing statement that "my comments are germane to the budget," and takes the position that he raised "issues directly tied to the budget: the County's status as a self-insured entity, the [C]ounty's vulnerability to a sexual harassment lawsuit, and the misuse of public funds on the employment and promotion of an individual due to her sexual relationship with the supervisor." *Id.* at 7.

The parties dispute whether Plaintiff's statements were related to the 2024 budget. On the one hand, viewing the facts in the light most favorable to Plaintiff, as required for Defendants' motion for summary judgment, there is sufficient evidence for a reasonable jury to credit Plaintiff's

testimony and conclude that his statements were related to the 2024 budget. However, drawing all reasonable inferences in favor of Defendants, the Court cannot say that a reasonable fact-finder could not find in favor of the County and Reynolds. Accordingly, the Court concludes that neither party is entitled to summary judgment based on the question of whether Plaintiff's statements were related to the 2024 budget, and this issue will need to be decided by a jury. *See Post v. Killington, Ltd.*, No. 07-cv-252, 2010 WL 3323659, at *10 n.10 (D. Vt. May 17, 2010) (citing *Lockwood v. Lord*, 163 Vt. 210, 217, 657 A.2d 555, 560 (1994) (where evidence may be subject to multiple interpretations, the court may not substitute its judgment for that of the jury in choosing the correct interpretation)), *aff'd*, 424 F. App'x 27 (2d Cir. 2011); *see also* 9 C. Wright & A. Miller, Federal Practice and Procedure § 2528, at 294 (3d ed.) ("[I]f the evidence reasonably might lead to either of two inferences it is for the jury to choose between them.").

Defendants argue in the alternative that the question of whether Plaintiff's statements were related to the 2024 budget is "irrelevant because plaintiff was removed from the meeting because of his disruptive conduct, not the content of his speech." Dkt. No. 34 at 9. Specifically, Defendants argue that Reynolds did not remove Plaintiff until after Plaintiff "spoke over him (twice), became disruptive, and said he was going to do what he wanted to do and Reynolds should do the same." *Id.* Plaintiff responds that he "raised his voice . . . to be heard" after Reynolds "cut off" his microphone, and that "the constitutional violation took place well before [Plaintiff] raised his voice" when Reynolds "began persistently interrupting [him] and refusing to let him speak." Dkt. No. 37 at 7.

"[C]ourts can take notice of government interests that 'ring[ ] of common-sense.'" *Tyler*, 74 F.4th at 64 (2d Cir. 2023) (quoting *Hotel Emps.*, 311 F.3d at 554). "And many courts have recognized that preventing disruptive activity is a legitimate and common-sense government

interest that can justify restrictions on speech in limited public fora." *Id.* (citing *Hotel Emps.*, 311 F.3d at 554); *see also id.* (citing *Make The Rd. by Walking v. Turner*, 378 F.3d 133, 148 (2d Cir. 2004) ("The most common reason [for excluding expression in a nonpublic forum] is that the excluded expression is distracting or disruptive.")).

Defendants cite to *Arnold v. Ulatowski*, No. 10-cv-1043 (MAD/ATB), 2012 WL 1142897, at *4 (N.D.N.Y. Apr. 4, 2012), to support their argument that they are entitled to summary judgment because "courts routinely uphold rules promoting decorum in limited public fora." Dkt. No. 32-10 at 16. In *Arnold*, the district court granted summary judgment to the defendant, a town supervisor, concluding that he "had the discretion to cut off Plaintiff's speech, which was composed mostly of irrelevant, personal attacks against [the town supervisor] and the Town in general, done in an admittedly hostile and angry manner." 2012 WL 1142897, at *4. After the town supervisor "stated that he intended to close the public hearing," "Plaintiff stood up," "stated that he had comments to make," and "took" the floor. *Id.* at *1 n.1. Plaintiff "then blasted the Town for about a minute and half and then stated okay, enough of my tirade, and proceeded to comment on the question at hand." *Id.* at *1 (cleaned up). "At one point, [the town attorney] interjected and tried again to explain the purpose of the zone change." *Id.* (citation omitted). "After expressing the fact that he was against the zone change, Plaintiff ended his comments by stating that 'you may be able to close this hearing without letting me speak, but by no means is this the end of this matter, in fact, it's just the beginning. I'll see you in court.'" *Id.* (cleaned up). Plaintiff, who was "angry" and "speaking loudly" during his "tirade" "blew [his] cork and [he] laid into" the town supervisor speaking "for a minute or a minute and a half on what I thought of him and the town board." *Id.* at *5. (quotations omitted). Finally, the Town Board had "already

conducted a public hearing . . . where it accepted comments from the public on the proposed action." *Id.* at *7.

This case is different than *Arnold* for several reasons. First, Plaintiff signed up to speak and spoke during the portion of the meeting dedicated to the 2024 budget, while the *Arnold* plaintiff's "tirade" occurred after the town supervisor had stated his intention to end the meeting, and the town board had previously "conducted a public hearing" on the topic the *Arnold* plaintiff addressed. *Id.* Second, Plaintiff did not verbally attack Reynolds, while the *Arnold* plaintiff "laid into" the town supervisor, speaking directly about the town supervisor (as well as the town board).[4] *Id.* Third, even assuming for purposes of these motions, as Plaintiff concedes, that Plaintiff "raised his voice" after Reynolds cut his microphone, Dkt. 33-1 at ¶ 23, the record does not indicate when the microphone was cut, and the time between when Reynolds first interrupted Plaintiff and when Reynolds directed that he be removed was less than 30 seconds. Dkt. No. 32-3 at 18:05–34. The *Arnold* plaintiff, in contrast, "blew [his] cork and laid into" the town supervisor, and the *Arnold* plaintiff himself estimated that he "probably spoke for a minute or a minute and a half on what I thought about him and the town board." *Arnold*, 2012 WL 1142897, at *5.

Defendants also rely on *Curley v. Philo*, No. 07-cv-370 (GLS/DRH), 2009 WL 2152323 (N.D.N.Y. July 14, 2009). *See* Dkt. No. 32-10 at 16. In *Curley*, the plaintiff was removed from a school board meeting when he began to talk about a school banquet slide show and the girls' soccer coach where those topics were not permitted at that meeting. *Curley*, 2009 WL 2152323, at *1. "When [the plaintiff] attempted to speak about those issues at the meeting, [the plaintiff] was advised those issues were not for discussion and, eventually, he was escorted out [of] the meeting."

[4] Defendants have not offered any evidence that the subject of Plaintiff's comments, Mr. Garnar, was even in the room.

*Id.* at *1. The district court granted summary judgment to the defendants (the school district and a member of the board of education) because the defendants "had the right to exclude the topics of the slide show and the girls' soccer coach from the forum regardless of the particular stand a speaker may have and, that in doing so, there was no viewpoint discrimination on its part" given that "all viewpoints regarding those subjects received the same treatment." *Id.* at *3 (citing *Paulsen v. Cnty. of Nassau*, 825 F.2d 66, 69 (2d Cir. 1991)). In addition, the *Curley* plaintiff had previously addressed those issues, and the defendants were "fully aware of his concerns and its decision not to cover that topic again at a subsequent meeting was reasonable." *Id.*

Here, Reynolds did not exclude any specific topics, but instead restricted comments to the 2024 budget, and there is a genuine disputed material fact about whether Plaintiff's comments were related to the 2024 budget. *See* Dkt. No. 32-9 ¶ 12. In contrast, the *Curley* plaintiff talked about issues that had explicitly been excluded from that meeting. 2009 WL 2152323, at *3. In addition, unlike the *Curley* plaintiff, there is no evidence that Plaintiff previously had an opportunity to present his concerns regarding these issues. *Curley*, 2009 WL 2152323, at *3.

Viewing the facts in the light most favorable to Plaintiff, as required for Defendants' motion for summary judgment, there is sufficient evidence for a reasonable jury to conclude that Plaintiff's conduct was not an independent and legal basis to remove him from the meeting, particularly given how the removal is intertwined with the disputed material fact about whether Plaintiff's statements fell within the purpose of the limited public forum – that is, the 2024 budget. That question is therefore a genuinely disputed, material fact that a jury must decide. In the alternative, viewing the facts in the light most favorable to Defendants, as required for Plaintiff's motion, a reasonable jury could examine the evidence and testimony and conclude that Plaintiff's conduct was indeed an independent and legal basis to remove him from the meeting.

For all of the above reasons, neither party is entitled to summary judgment on Plaintiff's First Amendment claim, and the competing motions are therefore denied.

**B. Qualified Immunity**

Defendants argue, in the alternative, that Reynolds is entitled to qualified immunity. Specifically, they argue that the undisputed facts demonstrate that "plaintiff strayed far off topic to personal matters falling outside of the County's proposed budget and that he did so in an increasingly combative and disruptive manner." Dkt. No. 32-10 at 17–18. In addition, Defendants maintain that Reynolds took a measured response "in steps" after consulting with the County Attorney, and that the *Arnold* decision established that "it was objectively reasonable for . . . Reynolds to believe that he was not violating any of plaintiff's clearly established rights." *Id.* at 18. Plaintiff argues in response that Reynolds is not entitled to qualified immunity because he was "making [the rules], and he did so in a way that singled out [Plaintiff] while ignoring other speakers who violated the 'neutral' rules." Dkt. No. 37 at 13.

"'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Russell v. Scott*, 170 F.4th 83, 93 (2d Cir. 2026) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal quotation and citation omitted). On summary judgment, claims of qualified immunity are evaluated "using a two-part inquiry: (1) 'whether the facts, taken in the light most favorable to the party asserting the injury, show that the [government official]'s conduct violated a federal right' and (2) 'whether the right in question was clearly established at the time of the violation.'" *Sloley v. VanBramer*, 945 F.3d 30, 36 (2d Cir. 2019) (quoting *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014)). "A defendant is entitled to qualified immunity only if he can show that, viewing the evidence in the light most

favorable to plaintiffs, no reasonable jury could conclude that the defendant acted unreasonably in light of the clearly established law." *Golodner v. Berliner*, 770 F.3d 196, 205 (2d Cir. 2014) (citing *Demoret v. Zegarelli*, 451 F.3d 140, 148 (2d Cir. 2006)).

Regarding the first prong, a reasonable juror could credit Plaintiff's version of events and conclude that Reynolds violated Plaintiff's First Amendment right to free speech. As a result, whether Reynolds is entitled to qualified immunity at this juncture depends on whether it was clearly established that Plaintiff's version of Reynolds' conduct violated the First Amendment. To be sure, the right to free speech is a clearly established constitutional right. Furthermore, the genuine disputes of material fact underlying Plaintiff's free speech claim—whether Plaintiff's statements fell within the purpose of the meeting, the 2024 budget, and whether, given Plaintiff's conduct, removing him for conduct was a pretext for restricting the content of his speech—are relevant to assessing Reynolds' conduct. Crediting Plaintiff's version of events, however, as the Court must at this stage, a reasonable jury could conclude that Reynolds cut off Plaintiff's speech and removed him because of the content of his speech. Defendants have not explained how such a finding would not be a violation of a clearly established right. As a result, Reynolds has not established that he is entitled to qualified immunity at this time. Defendants' motion for summary judgment with respect to qualified immunity for Defendant Reynolds in his personal capacity is therefore denied.

### C. Reynolds' Liability in His Official Capacity

Defendants are entitled to summary judgment on the claim against Reynolds in his official capacity. An official-capacity claim is "in all respects other than name, to be treated as a suit against the entity.'" *Reynolds v. Vill. of Chittenango*, No. 19-cv-416 (GLS/ML), 2023 WL 6460417, at *6 (N.D.N.Y. Oct. 4, 2023) (quoting *Sheriff's Silver Star Ass'n of Oswego Cnty., Inc.*

*v. Cnty. of Oswego*, 56 F. Supp. 2d 263, 265 n.3 (N.D.N.Y. 1999) (citation omitted)). That is why "courts routinely dismiss official capacity claims as redundant when the municipal entity is also a defendant to the same claims." *Id.* (citing *Sheriff's Silver Start Ass'n*, 56 F. Supp. 2d at 265 n.3 ("courts have dismissed official-capacity claims as unnecessary or redundant where similar claims are asserted against the entity") (citations omitted)); *see also Legette-Edwards v. Syracuse*, No. 06-cv-892 (NAM/DEP), 2007 WL 2891774, at *4 (N.D.N.Y. Sept. 27, 2007) ("With regard to the individual defendants, to the extent that they are being sued in their official capacities, the claims against them are duplicative of the *Monell* claim against the City.") (citing *Tsotesi v. Bd. of Educ.*, 258 F. Supp. 2d 336, 338 n.10 (S.D.N.Y. 2003)) (additional citation omitted); *see also id.* (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) (holding that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"); *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (holding that "an official capacity suit is, in all respects other than name, to be treated as a suit against the [municipal] entity. . . .")).

Plaintiff's official-capacity claim against Reynolds is therefore redundant of his claim against the County. Accordingly, Defendants' motion to dismiss this claim is granted.

**D. The County's Liability**

Regarding the County's liability, Defendants argue that the complaint did not sufficiently allege *Monell* liability, but even if it had, that Plaintiff has not provided any evidence of a policy or pattern resulting in a constitutional violation to survive Defendants' summary judgment motion. Dkt. No. 32-10 at 18; Dkt. No. 34 at 9–12. Plaintiff responds that the complaint sufficiently alleged a *Monell* claim against the County, and Plaintiff is entitled to summary judgment because Reynolds executed an official policy of the County. Dkt. No. 33-2 at 18; Dkt. No. 37 at 10–13.

At the outset, the complaint has just one count, which alleges a First Amendment violation under 42 U.S.C. § 1983 against "Defendants." Compl. ¶¶ 35–48. In addition, the complaint does not mention *Monell*. *See generally id.* Given that Defendants cite no legal authority establishing that a plaintiff must specifically use the term *Monell* in a complaint to plead such a claim, the Court declines to dismiss the *Monell* claim on this basis.

It is well settled that "a municipality cannot be made liable [under § 1983] by application of the doctrine of *respondeat superior*." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (quotations omitted). Rather, "[i]n order to hold the County liable under § 1983, plaintiff must put forth sufficient evidence to show that individual defendants' unconstitutional actions were taken pursuant to an official municipal policy, custom, or practice." *Thornton v. Cnty. of Albany*, No. 14-cv-679 (DNH/CFH), 2016 WL 5793714, at *7 (N.D.N.Y. Oct. 4, 2016) (citing *Monell*, 436 U.S. at 690–91).

"[T]o demonstrate *Monell* liability, a plaintiff must allege a violation of constitutional rights by employees of the municipality and (1) the existence of a municipal policy or custom that caused his injuries beyond merely employing the misbehaving officers; and (2) a causal connection - an affirmative link - between the policy and the deprivation of his constitutional rights." *Werkheiser v. Cnty. of Broome*, 655 F. Supp. 3d 88, 109 (N.D.N.Y. 2023) (cleaned up).

"A municipal policy or custom may be established where the facts show: (1) a formal policy, officially promulgated by the municipality, *Monell*, 436 U.S. at 690; (2) action taken by the official responsible for establishing policy with respect to a particular issue, *Pembaur v. Cincinnati*, 475 U.S. 469, 483–84 (1986); (3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127–30 (1988); or (4) a failure to train or supervise that amounts to 'deliberate

indifference' to the rights of those with whom the municipality's employees interact, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)." *Rivas v. Onondaga Cnty.*, No. 19-cv-844 (BKS/TWD), 2025 WL 2675826, at *16 (N.D.N.Y. Sept. 18, 2025) (internal citations omitted).

"It is well-established that *Monell* liability attaches 'where a single act is taken by a municipal employee who, as a matter of [s]tate law, has final policymaking authority in the area in which the action was taken.'" *Galgano v. Cnty. of Putnam*, No. 16-cv-3572, 2020 WL 3618512, at *11 (S.D.N.Y. July 2, 2020) (quoting *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008)); *see also Walton v. Safir*, 122 F. Supp. 2d 466, 477 (S.D.N.Y. 2001) ("[T]he act of an official with final decision-making authority, if it wrongfully causes the plaintiff's constitutional injury, may be treated as the official act of the municipality. . . .") (citing *Praprotnik*, 485 U.S. at 123) (citations omitted). Nevertheless, to impose *Monell* liability under this theory, Plaintiff must allege facts establishing that the final policymaker was personally involved in the alleged constitutional violation.

Plaintiff's allegations here are extremely brief, but nevertheless sufficient. The complaint alleges that "Reynolds removed Solak according to county policy, and he is the final decisionmaker regarding the decision to silence public comments." Compl. ¶ 34. Accepting these allegations as true, and drawing all reasonable inferences from those allegations, *see McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022), the complaint alleges that Reynolds, the County Legislature Chair, was "an official with final decision-making authority" regarding the application of county policy concerning speech for the budget meeting, and he "wrongfully cause[d] the plaintiff's constitutional injury." *Walton*, 122 F. Supp. 2d at 477 (citation omitted). As a result, the allegations are sufficient to allege that Reynold's action was "the official act of the municipality." *Id.*

Turning to the County's summary judgment motion on the *Monell* claim, viewing the evidence in the light most favorable to Plaintiff, the same genuine disputed material facts explained above regarding whether there was a violation of Plaintiff's constitutional right, prevents summary judgment on the *Monell* claim. Defendants' summary judgment motion on the claim against the County is therefore denied. Plaintiff's summary judgment on this claim is also denied because, viewing the evidence in the light most favorable to Defendants, a reasonable jury could conclude that the County did not violate Plaintiff's constitutional rights.

## V. CONCLUSION

For these reasons, it is

**ORDERED,** that Defendants' motion for summary judgment, Dkt. No. 32, is **GRANTED in part and DENIED in part**, and it is further

**ORDERED,** that Defendants' motion for summary judgment is **GRANTED** to the extent that the complaint is **DISMISSED** against Defendant Daniel Reynolds in his official capacity only, and it is further

**ORDERED** that Defendants' motion for summary judgment is in all other respects **DENIED**, and it is further

**ORDERED,** that Plaintiff's motion for summary judgment, Dkt. No. 33, is **DENIED**, and it is further

**ORDERED,** that Plaintiff's First Amendment claim against Defendant Daniel Reynolds in his personal capacity and Defendant Broome County and the *Monell* claim against Defendant Broome County shall proceed to trial.

Dated: September 30, 2026

Elizabeth C. Coombe
U.S. District Judge